## The People v. Hezekiah Smith.

A person charged in the Recorder's Court of Detroit, with an offense against the general laws of the State, can not waive his right to a trial by jury.

THE PEOPLE *v.* SMITH.

Notwithstanding the repeal of the provision in the charter of Detroit, which de-
fined the powers and duties of constables, these officers in that city possess
the same general powers belonging to the office in the towns.

*Heard April 13th. Decided April 19th.*

On exceptions from the Recorder's Court of Detroit, where defendant was informed against for resisting the service, by a constable of Detroit, of a warrant issued for his arrest by a justice of the peace of said city, March 22, 1861, on a charge of assault and battery, and made returnable before the Police Justice. In the Recorder's Court the prisoner moved to quash the information, on the ground that the constable had no legal right to serve the warrant. This motion was denied, and the case went to trial, "the prisoner," as stated in the bill of exceptions, " with the consent of the court, having waived his right to a trial by jury, under § 33 of Chap. 6 of the city char- ter." The Recorder found him guilty.

*J. J. Speed,* for defendant :

1. The powers and duties of constables in Detroit were defined by § 18 of the charter (*Laws of* 1857, *p.* 90) which provided, among other things, that "the director of the poor and constables shall have the power and perform the duties of township officers elected under the general laws of the State, subject to the provisions of this act." Fur- ther rights, powers, duties and liabilities might be pre- scribed by the Common Council: § 20.

The Constitution (*art.* XI) provides for not exceeding four constables in each township, " whose powers and duties shall be prescribed by law." It was evidently the inten- tion of the Constitution, that in the case of township officers, they should have no common law powers, but where there was in existence a law defining their powers, it should continue until altered or repealed by the Legislature; and if they had any common law powers, they should have them no longer, unless it should be so declared by the

Legislature, inasmuch as such powers should be "prescribed by law." If township constables have no common law powers, the constables elected under the charter had none, because they had only the powers of township constables.

By the statute, township constables were, among other things, empowered to serve process directed to them "in any township in their county." They were also declared to be ministerial officers of justices of the peace: — *Comp. L.* §§ 574, 575, 576.

The statute under which the warrant was issued under which defendant was sought to be arrested, does not specify the particular officers by whom this process shall be served. It must be directed to some one authorized by law to serve it. Township constables, sheriffs, and in some cases coroners, are authorized to serve warrants by virtue of provisions in the same statute which authorizes their issue. Though the statute does not say to whom the warrant shall be directed, the conclusion is irresistable that *township* constables and sheriffs are the only persons to whom it may be directed, unless some other officer should be empowered to serve it by virtue of his office. City constables were so empowered by § 18 above quoted, but in amending this section, March 12, 1861, all allusion to constables was omitted in the section as amended. The statute conferring powers upon city constables being thus repealed, it must be held that the Legislature intended those powers should no longer be exercised. At least, the Legislature making certain provisions relative to the constables which included and even gave greater power than they had at common law, the Legislature impliedly repealed the common law, having exhausted the subject: — 10 *Pick* 37; 12 *Mass.* 537, 535; 1 *Pick.* 43, 45; 1 *Ashm.* 179; 3 *Binn.* 595; 8 *Port.* 434; 14 *Mo.* 147; 6 *N. H.* 59. By a repeal of these provisions they took away all the power that had been conferred, and left the officers without any power, either statutory or common law: — 3 *Cush.* 150.

2. The right to a trial by jury could not be waived: *Cancemi's case*, 18 *N. Y.* 128; 8 *Mich.* 110.

*D. E. Harbaugh, Prosecuting Attorney for Wayne County,* for the People.

*G. V. N. Lothrop,* on the same side :

The office of constable is a very ancient one. And at the common law he was a conservator of the peace, and a ministerial officer of justices, coroners, &c. And this office is probably found wherever the common law has gone in the United States. And his duties and functions remain substantially what they were at common law.

In Michigan, the office has certainly existed from an early period. Under the territorial and State organization he has been a conservator of the peace, and the ministerial officer of justices.

The question now arises, whether the constables in this city have power to execute process. It is not denied that the office legally exists, or that it is legally filled. But it is insisted that they have no power, because the last clause of Sec. 18 of Chap. 4 of the revised charter was repealed last winter. Is this so ?

So far as townships are concerned, the office is a constitutional one. In this city the office is statutory. *Rev. Charter, chap.* 2, §1.

By the Compiled Laws, p. 241, constables are made the ministerial officers of justices, and are authorized to serve any process lawfully directed to them, in any township in the county.

It may be said that this relates *only* to *town* constables. I doubt whether it does, exclusively so. If it has that strict construction, can a town constable serve a process in his county except in "townships?" Can a Springwells constable serve a process in the *city* of Detroit ?

Waiving this, how does the case stand otherwise ?

Let us see what duties and powers are expressly conferred on constables by existing statutes.

I. Civil duties.

1. Justices' courts of civil jurisdiction, both in town and city, exist under a common constitutional and statutory authority:— *Const. Art. VI; Comp. Laws,* §§ 3653 and 3670. Justices' writs of summons run to "any constable of the county," § 3665. So of civil warrants, § 3673. And of civil attachments, § 3678. And writs of replevin, § 3696. And subpœnas and attachments for witnesses, §§ 3744, 3746. So making jury lists and serving venires, §§ 3757, 3759. So keeping charge of jury, § 3772. So of executions, § 3790, *et seq.*: and see further provisions, § 3824 to § 3831.

These leave no doubt that a constable is the ministerial officer of justices' courts, in the city as well as elsewhere, in civil cases.

II. Duties in criminal cases.

1. *All* justices may hold court for the trial of minor criminal offenses;— *Comp. Laws* § 3624.

The next section authorizes the justice to issue his warrant for the arrest of the accused, "requiring the *officer to whom it is directed,*" &c. The statute does not in terms name to what officer it may be directed. But § 3931, authorizes the court to direct "any constable of the county" to make a jury list.

By § 3932, the venire may be directed to any constable of the county. By § 3937, the jury may be put in charge of any constable. And by § 3943, the warrant to execute the sentence may run to any constable of the county. This can leave no doubt but constables are empowered to perform all ministerial duties of a justices' court held for criminal trials.

2. The above examination has shown that constables may act in all cases as ministerial officers of justices sitting for criminal trials.

The Police Justice of Detroit is merely a justice of

the peace, whose jurisdiction is limited to that of justices sitting for criminal trials, and as examining magistrates. *Laws of* 1850, *p.* 364-5, § 2. Warrants of arrest, or executions issued by himself, or issued by a justice of the peace and returnable before him, are governed by the laws applicable to justices of the peace acting in like capacity. See §§ 3 and 6.

3. In proceedings before examining magistrates.

The warrant of arrest may be issued to any constable, *Comp. L.* § 5979. The order of commitant may be to a constable, § 5986.

The result is, that for all the purposes [for which a justice of the peace or the Police Justice may sit, constables are recognized as their ministerial officers, to whom all their lawful processes may be directed. And of course they may execute all such writs. In other words, they have all the usual rights and powers of such ministerial officers.

In the case before the court, the warrant of arrest was on a charge which could be tried by the Police Justice. It was issued by a justice of the peace of the city of Detroit, returnable before the Police Justice. *Laws of* 1850, *p.* 365, § 3.

And as I have shown that the constables are ministerial officers of justices in such cases, the warrant gave the constable lawful authority to make the arrest.

CAMPBELL J.:

This case comes before us upon a bill of exceptions from the Recorder's Court of Detroit, before judgment. It appears that the prisoner was tried by the court without a jury, which he is said to have waived by consent of the Court.

The first question demanding attention is, whether a trial can be had without a jury, in the Recorder's Court, of a criminal prosecution.

THE PEOPLE v. SMITH.

The charter of Detroit recites that "*In all trials upon indictments, the person or persons upon trial shall be tried by a jury, unless the right to a trial by jury be, with consent of the court, waived.*" *Laws of* 1857, *p.* 115, § 33. The prisoner was not tried upon an *indictment*, but upon a complaint or information under the charter. The view we have taken of the law renders it unnecessary to determine whether the language of this section can be applied to [trials under any form of complaint except an indictment.

The charter of the city leaves all proceedings in the Recorder's Court, in the trial and punishment of criminal offenders against the general laws of the State, to be governed by the laws applicable in the Circuit Courts, which provide expressly that all issues of fact on indictment or information shall be tried by jury. *Comp. L. p.* 1592 ; *Laws of* 1859, *p.* 301. In those courts there is no provision recognizing the waiver of a trial by jury. The charter does not authorize it expressly, but, if at all, by implication. It does not point out how it shall be signified — whether verbally or in writing; nor when it may be made, nor whether it may be revoked. Neither does it point out how the consent of the court is to be manifested of record, as it must be of necessity in order to make the record perfect if assailed on error. The law also makes no provision for the *finding* of the court for or against the prisoner, nor when or how judgment shall be rendered upon it. Nor is there any statute by which any rulings of law can be reached, unless they arise upon the admissibility of testimony, and upon this there would be very great difficulty.

If the common law provided for such cases, the question might perhaps be reduced to one of power in the Legislature; first, to permit a waiver of a jury at all; and second, to permit it in one court, leaving all the other courts of the State to be governed by a statute

THE PEOPLE v. SMITH.

forbiding it.   But we can not find any common law prac-
tice by which these deficiencies can be rectified.   The con-
sequences would be too serious to allow us to assume
that, by the silence of the Legislature, the court was to
be allowed to take any course which might appear pro-
per.   This could not be permitted in such cases under any
known rule of construction.   And even if it could, there
are so many cases expressly provided for by statute which
could not be affected by such implication, among which
may be mentioned findings on cases of insanity, that the
adoption of even such a broad rule would not remove
many serious difficulties.   We must, therefore, conclude
that, until the Legislature go further and provide some
machinery for the trial and review of criminal causes in
courts of record without a jury, the clause of the char-
ter referred to must remain inoperative to change the
general law.   We are of opinion that the Recorder had
no power to try the case without a jury.

As we are informed that the question of the authority
of constables in the city of Detroit, is one which is giving
occasion to a good deal of litigation, and requires settle-
ment in order to insure the due administration of justice,
and will also arise upon the trial of this cause, we have
with some reluctance determined to decide it, although
the case is fully disposed of at this hearing without it.
We have been aided by a very able and exhaustive argu-
ment, and are entirely satisfied upon it.   While there are
doubtless some common law incidents of the office of con-
stable not attached to it here, where it is to a great extent
regulated by statute, yet we are of opinion that constables
in Detroit, independent of the repealed section of the char-
ter, possess the same general powers belonging to the office
in towns: the charter, so far as it applies, being only de-
signed to affect some local powers.   It is impossible to give
full effect to the jurisdiction of justices of the peace in the
city unless this construction is given to the statutes.   It

is very generally true that, when a statute provides for an officer by a known legal name, and with settled legal powers, the presumption of legal identity must prevail, unless repelled by strong circumstances. There is nothing in the legislation before us which indicates any repugnance. It could only be inferred by regarding the original section of the charter amended as the source of all the power of constables to serve process in cases like that before us. We do not think this presumption can fairly arise in view of the great body of statutes regulating the ministerial duties of these officers, which are strictly in accordance with the principles of the common law, and would, probably, in the entire absence of special statutes, be substantially the same. The statutes were so fully reviewed on the argument that we do not deem it necessary to enter upon a detailed examination of them. We think that the city constables remain ministerial officers of justices as before.

The case must be remanded to the Recorder's Court, as there has been no legal trial.

The other Justices concurred.