Marshall, C. J.
This cause was heard upon a demurrer to the petition, which merely recites that *588 the relator was found guilty of a crime by the verdict of eleven jurors and that the journal does not disclose the fact that the verdict was found by only eleven jurors, and the relator therefore prays that the journal may be corrected and made to state the facts.
It further appears, however, on the opening page of plaintiff’s brief, and in the further oral statements of counsel during the argument upon the demurrer, that during the course of the trial a juror was taken sick and was thereafter unable to attend, and that the trial proceeded before the remaining eleven members with the relator’s consent; that the eleven jurors returned a verdict of guilty; and that judgment and sentence were pronounced thereon.
It is of course argued that the journal imports absolute verity and that it cannot be collaterally attacked. It does not seem profitable to discuss the question whether this proceeding is a direct or collateral attack upon the record, and it would seem to be the better practice to require in all instances that the records of courts of justice should speak the truth; and, in those instances where it can be shown that they do not speak the truth, the courts should be quick to require their correction and that they be made to speak the truth so far as the truth can be made to appear.
In this case it is not only not disputed that the journal does not state the facts, but it also appears that there was an agreement between court and the parties and their counsel that the journal should recite certain things which were then known not to .be correct. If at the time the juror was taken sick *589 the court had excused the juror without the consent of the defendant, and had ordered that the journal should show the presence of twelve and the rendition of a verdict by the full panel of twelve in the event of his being found guilty by the remaining eleven, this court would have no hesitation in ordering the journal corrected, and upon a review of the record thus corrected would not hesitatb to grant a new trial. The defendant having voluntarily consented to the juror being excused and the trial proceeding to the remaining eleven, and having consented that the journal might show the return of a verdict by the full panel, and all these matters appearing by the undisputed statements of counsel, it is proper that this cause should be determined here as though the statements of counsel made during the oral argument appeared in an answer to the petition and the cause were being heard upon a demurrer to such answer.
The question to be decided, therefore, is, whether the right of trial by jury, as guaranteed by Sections 5 and 10 of the Bill of Rights, can be waived.
It has been accepted as settled law throughout the United States that a jury is composed of twelve men, and the early cases in Ohio are in perfect harmony with that principle. It was so held by Ranney, J., in the case of Work v. State, 2 Ohio St., 297, and by Thurman, C. J., in Lamb v. Lane, 4 Ohio St., 167.
In any consideration of the language of the Bill of Rights we think that well-settled meaning should be given to the term “jury.” Section 5 of the Bill of Rights provides: “The right of trial by jury *590 shall be inviolate, except that, in civil cases, laws may be passed, to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury.” Section 10, in part, reads as follows: “In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against, him, and to have a copy thereof; to meet the witness face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed;” etc.
The legislature of Ohio has made no requirement that persons accused of crime shall be tried by jury, so that the constitutional provisions must control unaided by any statutory enactment. Section 5 above quoted is the guarantee of a right or privilege, and Section 10 above quoted states in substance that persons accused of crime shall be allowed a speedy public trial by an impartial jury, and the only question for determination is as to whether such right and allowance can be effectively waived by accused persons, or whether, on the other hand, the trial at all events must be by a jury of twelve •men.
An examination of authorities from courts of twenty-five states of the Union discloses a radical diversity upon the question whether a person accused of a crime can waive trial by jury and consent to trial by the court without the intervention of a jury; and also upon the question whether when it becomes necessary during the course of a trial to *591 excuse one or more jurors on account of illness or other good cause, in order to proceed with the trial, one or more jurors may be excused by the consent of the public prosecutor and the defendant and his counsel, with the approval and consent of the court hearing the cause, and the trial then proceed to final judgment and sentence under a stipulation that no advantage will be taken of the failure to render a verdict by the full panel of twelve jurors and no error will be prosecuted from a conviction based upon the failure to have a full panel.
Much of the diversity in the conclusions reached by the different courts will be found to be due to the fact that the constitutional and statutory provisions of the different states of the Union widely differ.
A large number of the cases hold that a jury cannot be waived, that the requirement of a full panel of twelve cannot be waived, and that a defendant cannot consent to one or more jurors being excused during the progress of the. trial and before its termination. Some of the decisions are based wholly or partly upon grounds of public policy; others so decjde because the constitutional provisions bearing upon the question are in terms mandatory; while still others are based upon the ground that the legislative enactments, are not forbidden by the constitution and are in terms mandatory.
The constitutions of many of the states merely provide that the accused shall have the “right” to a jury trial. In some states,.where the constitution so provides, statutes are found requiring crimes to *592 be tried only by jury, which statutes are not by their terras permissive, but, on the contrary, contain language which is peremptory and mandatory.
In all of those states where the constitutional and statutory provisions contain language which is peremptory and mandatory, and also in other states where either the constitution or the legislative enactment is mandatory, there can be no doubt as to the correctness of the conclusions reached by the court, and the decisions of the courts of those states cannot be of any service; neither can they be regarded as in any sense an authority in determining the question in states like Ohio,' where the Bill of Rights is merely the declaration of a right ór privilege, without any statute upon the subject.
In decisions rendered in a few states where the jury trial is clearly only a right or privilege, the courts have nevertheless, on grounds of public policy, held that the accused may not waive the right, and in a few other states where the constitu-' tion and statutes also contain language showing that jury trial is only a right or privilege it has been held that the right may be waived in whole or in part by the defendant, with the approval and consent of the prosecutor and the court.
In the federal constitution, which controls in the trial of federal offenses, and in the states of Louisiana, New York, North Carolina and Oklahoma, the constitutional provisions relating to trial of crimes are mandatory in form, and we will first briefly review the cases which have been decided under those constitutions.
*593 In Dickinson v. United States, 86 C. C. A., 625, the court states in the fourth paragraph of the syllabus that while a person accused of a crime may waive the disqualification of jurors, or even their impartiality, such person cannot waive his right to a trial by a jury of twelve by consenting, after a legal jury has been impaneled and two have been excused, to continue the trial and abide by the verdict of the remaining ten.
That case involved a construction of Section 2, Article III of the Federal Constitution, which contained the following language: “The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury.” On page 630, after referring to decisions to the contrary in the states of Maine, Massachusetts and New Hampshire, the opinion proceeds to construe the language of the constitution, and states: “On the other hand, the provisions of section 2 of article 3 are peremptory in form, and point out absolutely the tribunal which must dispose of the crimes to which they refer. They cover nothing except what concerns the public interests, as well as personal liberty. The article in unqualified terms establishes the tribunal.”
The case of Low v. United States, 94 C. C. A., 1, also turned upon the proper construction of Section 2, Article III of the Federal Constitution, and it was stated by the court that the offenses for which the defendants were indicted were crimes clearly comprehended within the provisions of that section. In a discussion of the principle involved, on page 5 of the opinion, the, court employed this *594 significant language: “This provision is not one merely extending a privilege or guaranteeing a right. It is all that and more. The ‘trial’ of every such crime ‘shall be by jury.’ It goes to the constitution of the tribunal, and a ‘trial’ for a ‘crime’ which is not ‘by jury’ is not a trial by any tribunal known to the constitution.”
This language is especially significant in any discussion of that case as an authority in the case at bar, because the provisions of the Bill of Rights of the State of Ohio clearly constitute the extension of a privilege and the guarantee of a right.
The peremptory language of the federal constitution can have no effect upon the procedure in Ohio, because Section 2, Article III, of the Federal Constitution, and sections pertaining to crimes in the amendments to the constitution, relate only to offenses against federal laws. This has been clearly so held in Eilenbecker v. District Court of Plymouth County, 134 U. S., 31, and Cook v. United States, 138 U.S., 157.
In the state of Louisiana, Article 116 of the Constitution of 1898 provides: “Causes in which the punishment is necessarily at hard labor shall be tried by a jury of twelve, nine of whom, concurring, may render a verdict.” It has accordingly been held in State v. Thompson, 104 La., 167, and State v. Jackson, 106 La., 189, that in case of crimes necessarily punishable at hard labor, defendant cannot waive trial by jury and cannot consent to be tried by the judge alone. The language of the constitution is of course peremptory in form.
*595 The case of Cancemi v. People, 18 N. Y., 128, is one which is frequently cited as an authority upon this proposition, and is discussed by counsel for the plaintiff in the instant case. By reference to the Constitution of New York, Section 2, Article I, we find: “The trial by jury, in all cases in which it has heretofore been used, shall remain inviolate forever.” It will be seen that this language does not say that the right of trial by jury shall be inviolate, but on the other hand the language is peremptory in form, though perhaps not quite so distinctly peremptory as in other constitutions hereinbefore referred to. The New York Constitution contained a further provision to the effect that “a jury trial may be waived by the parties, in all civil cases, in the manner prescribed by law.” The two provisions above quoted, taken together, would seem to make it'very clear that in that state the courts should forbid the frial of persons for crimes by any method other than jury trial. That case could be of no value in determining the proper procedure under the Ohio Bill of Rights.
In the state of North Carolina a provision is found in the Bill of Rights that “No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court.” The legislature enacted an exception to this provision, in the constitution providing that petty misdemeanors might be tried otherwise than by jury, with the right of appeal. It was accordingly held in the cases of State v. Stewart; 89 N. C., 563; State v. Holt, 90 N. C., 749, and State v. *596 Rogers, 162 N. C., 656, that a trial by jury in a criminal case cannot be waived.
In the state of Oklahoma, Section 5142 of the statutes of 1903 provides: “No person can be punished for a public offense except, upon legal conviction in a court having jurisdiction thereof.”' Sections 5151, 5158, 5434, 5435 and 5436 are equally peremptory in commanding that convictions of public offenses must be only by the verdict of a jury, and that all issues of fact must be so tried. In accordance with these statutory provisions it was held in In re McQuown, 19 Okla., 347, that a jury could not be waived, and that any judgment pronounced by the court after a plea of not guilty, without the intervention of a jury, is void.
In the state of Arkansas, without any constitutional provision on the subject, the statute contains a provision which has been the subject-matter of judicial determination. In the cases of Wilson v. State, 16 Ark., 601, and Bond v. State, 17 Ark., 290, the court found that the accused might not waive trial by jury and consent that the judge try the issue, but this conclusion was reached because of the peculiar language of the statute governing criminal proceedings of that state, which was as follows: “All issues of fact, in any criminal or penal cause, shall be tried by a jury, to be selected, summoned, and returned, in the manner prescribed by law.” Clearly this provision also was peremptory and did not merely guarantee a right or privilege..
In the states jof Illinois, Michigan, Rhode lsland and Vermont the constitutions merely guarantee, a *597 right of.trial by jury, but the legislatures in those states have, .enacted statutes making jury trial in crimes mandatory.
In the state of Illinois the provisions of the state constitution are almost identical with the provisions of the Ohio Bill of Rights. Section 5, Article II, is as follows: “The right of trial by jury as heretofore enjoyed shall remain inviolate.” In that state, however, there is a further statutory provision as follows: “All trials for criminal offenses shall be conducted according to the course of the common law, except when this act points out a different mode,” etc. And again in another provision of the statute we find the following: “Juries in all criminal cases shall be the judges of the law and of the fact.” It was accordingly held in the case of Harris v. People, 128 Ill., 585, that the accused could not waive trial by jury and consent that the cause be tried by the court and that he could not by such waiver confer jurisdiction. In the opinion there is no discussion as to whether this conclusion was reached by reason of the provisions of the criminal code or whether it was based upon the constitutional provision. The above-quoted statutory provisions are peremptory in form and regardless of the constitutional provision it would seem that the court could not have decided otherwise upon a fair construction of those statutes.
In the case of People v. Smith, 9 Mich., 193, it was held that a person charged with an offense against the general laws of the state cannot waive his right to a trial by jury. This conclusion was reached 'by reason of the statutes of the state which *598 provide expressly that, all issues of fact on indictment or information shall be tried by jury. The statutes contain no provision for recognizing the waiver of trial by jury.
In the state of Rhode Island the constitutional provision, appearing in Section 15, Article I, is: “The right of trial by, jury shall remain inviolate.” In the criminal code of the same state we find the following: “All criminal appeals shall be heard and tried in the Superior Court with a jury.” It will therefore be seen that while the constitution contains the declaration of a right or privilege the statute contains a mandatory provision which cam not be waived, and it was accordingly held in the case of State v. Battey, 32 R. I., 475, that the waiver of jury trial and the judgment of the court without the intervention of a jury were void.
In the state of Vei'mont the Bill of Rights declares that jury trial is a right or privilege, and contains the following language, “which ought to be held sacred.” The statute, however, in that state is mandatory in requiring all convictions of offenses to be either by a confession of guilt in open court or by verdict of a jury. It was accordingly held in the case of State v. Hirsch, 91 Vt., 330, that the legislature has the power to extend the right of trial by jury beyond the limits guaranteed in the constitution; that the provisions of the statute become binding and therefore jury trial cannot be waived by accused persons.
In the states of Alabama, California and Connecticut the courts have held that a jury cannot be waived, but in none of the reported cases have the *599 courts entered into any discussion of either constitutions or statutes.
In the case of Bell v. State, 44 Ala., 393, it is stated in the syllabus that “In a criminal case, a verdict rendered by eleven jurors is invalid, notwithstanding the consent of the defendant and the solicitor.” But the report of that case does not disclose the language of the statute or the constitution of the state of Alabama, or whether jury trial was a right or privilege, or, on the other hand, whether or not the requirement of jury trial was peremptory in form. It further appears in that case that the above-quoted declaration was obiter, and that the real question decided by the court was whether a continuance of the cause after dismissing one of the jurors amounted to placing the accused in jeopardy.
In the case of People v. O’Neil, 48 Cal., 257, the report of the case does not state the constitutional provisions, but the statement of fact shows that the defendant consented to be tried by a jury of eleven men and afterward appealed from the adverse verdict. In disposing of the matter the court merely states that the authorities cited by the defendant established the proposition that a jury in a criminal action must within the meaning of the constitution consist of twelve men. It is fair to assume therefore that the constitutional provisions were peremptory.
The case of State v. Maine, 27 Conn., 281, holds that a court may not try a criminal case without a jury on a plea of not guilty even on agreement of parties. The opinion is very short and does not state the constitutional or statutory provisions *600 which form the basis of its conclusion. It merely states that there is no statute conferring on the court the power to try anyone charged with crime, except through the intervention of a jury.'
In the state of Kansas the constitutional provision is identical with the Ohio Bill of Rights and this constitutional provision was later supplemented by a statute making trial by jury in cases of felony mandatory. The courts of Kansas could therefore very well have rested upon the statutory provision, but they have not seen fit to do so. In the case of State v. Simons, 61 Kans., 752, it is held that: “The assent of a defendant upon trial on a charge of felony to the discharge of one of the jurors, with an agreement to submit to a verdict by the remaining number, is ineffectual to bind him, and in such case, in the event of an adverse verdict, he is entitled to a retrial, notwithstanding his agreement.” In the opinion we find the following, at page 754: “Nor is the trial by jury thus guaranteed a mere right of the accused, a something- in the nature of privilege which he may demand, and which, if de-‘ manded, must be accorded. It is, in the full sense, an obligation resting on the state, not becausé of a demand for it by the accused, but because from motives of public policy it is to the interest of the state to accord it.” After some discussion of other steps in criminal procedure which might be waived, the court makes the further observation: “Trial by jury in cases of felony is in the highest sense an institution of public policy. It was not ordained solely, nor even in its largest purpose, for the advantage of the accused. The state is interested in *601 the lives and liberties of its. citizens. To protect and defend from unjust accusations is as much, if not more, the care of the state as to punish the guilty for infractions of its laws.” In that case the court reaches the conclusion that the statute is expressive of the fundamental principle underlying it.
In the states of Missouri and Nebraska the constitutional provisions are substantially identical with the Ohio Bill of Rights, and as in Ohio no statutes have been enacted making any requirement either for the trial of crimes by jury or for waiver of the right of such trial. In the case of State v. Mansfield, 41 Mo., 470, the court held that the prisoner could not waive his constitutional right to a trial and verdict by a jury of twelve good and competent jurors. There is a review of many authorities pro' and con in the opinion and the court reaches its conclusion “on the ground that in criminal prosecutions the penalties, or punishment for the enforcement of which they are the means to the end, are not within the discretion or control of the parties accused; for no one has the right by his own voluntary act to surrender his liberty or part with his life. Another good and sufficient reason, it occurs to us, is, that the prisoner’s consent cannot, change the law. His right to be tried by a jury of twelve men is not a mere privilege; it is a positive requirement of the law. He can unquestionably waive many of his legal rights or privileges.”
In the state of Nebraska the Bill of Rights is identical with the corresponding provision in the Ohio constitution, but in addition thereto there is a statute which provides: “In all criminal cases, *602 except as may be otherwise expressly provided, the jury summoned and impaneled according to the provisions of the laws in force relating to the summoning and impaneling of juries in other cases shall try the accused.” Upon these grounds, as well as upon the declared public policy of the state, it was held in the case of Michaelson v. Beemer, Warden, 72 Neb., 761, that the judge has no jurisdiction to try a person charged with felony without the intervention of a jury and that such jurisdiction cannot be conferred by consent.
The foregoing is a rather complete review of all of the authorities outside of Ohio tending to support relator’s contentions in this controversy. For the reasons already stated, we are of the opinion that none of those cases have any controlling force or are even worthy of consideration as authorities, except the cases decided by the courts of Kansas, Missouri and Nebraska.,, The decisions of those states are fully offset by decisions of the courts of Massachusetts, Minnesota and Iowa.
We will first discuss the case of Commonwealth v. Dailey, 12 Cush. (66 Mass.), 80. In that case the constitutional and statutory' provisions of Massachusetts were not stated, but the decision of the court was upon the hypothesis that the defendant was entitled to be tried before a jury of twelve men. The facts were exactly parallel to the facts in the case at bar. In the opinion it is stated by Chief Justice Shaw, at page 82: “It may be said, perhaps, that a criminal cdse is no trial of a party’s rights; that it is for the interest of the public, in the administration of public justice, that no man shall *603 be convicted or acquitted, otherwise than according to the course provided by law. Still, even in the administration of criminal law, many legal provisions are made for the security and benefit of the accused, and it may be for his interest and benefit to waive them. He may in the first place waive a trial altogether, and plead guilty. He may consent to admit legal instruments offered on the other side, without legal proof of execution, on the belief, perhaps, that the evidence will be beneficial rather than injurious to him. He is supposed to understand his own rights, or be aided by counsel competent to advise and act for him. In the case supposed, the accused may have been successful in laying before the jury all his evidence, which he may fear he cannot again obtain. A long time may elapse before he can have another trial, and it is important to him to have an early decision, on many accounts. In the admission and rejection of evidence, in many points in the conduct of a trial, parties and their counsel, we think, may be safely allowed to jucjge as to what they will insist on and what they will waive. Having so done, and taken their chance for a verdict, it would be inconsistent with ordinary good faith and fair dealing to turn around and insist on legal exceptions, which they had pledged themselves to the court that they would not take.”
In State v. Sackett, 39 Minn., 69, the defendants waived a jury of twelve and formally agreed to try the case before eleven qualified jurors, and, after conviction, claimed that trial before eleven jurors was an irregularity and unconstitutional notwithstanding the stipulation and waiver. In the *604 opinion, after reciting several constitutional and statutory provisions to protect the life and liberty of persons accused of crime, and reciting further that many of such provisions are generally conceded to be subject to waiver, the court, at page 70, makes the following observation: “No attempt has ever been made to give prominence to any -one part of these sections over another part; nor has it ever been intimated that one could be infringed upon more than another. Each is an independent but absolute guaranty to those' needing protection; and it is somewhat difficult to see why, if either of the enumerated rights can be waived, all cannot be.”
In the cases of State v. Kaufman, 51 Ia., 578, and State v. Grossheim, 79 Ia., 75, it was held that a defendant in a criminal case may with the consent of the state and the court waive his right to a trial by a jury of twelve men and agree that the trial shall proceed with the eleven jurors, and that the defendant may waive a statute enacted for his benefit. These cases are peculiarly strong authorities for the reason that the code of criminal procedure in that state is peremptory in form, as follows: “An issue of fact must be tried by a jury of the county in which the indictment is found, unless a change of venue has been awarded.” On.the theory that only the cases decided by the courts of Kansas, Missouri and Nebraska are authoritative on the part of the plaintiff, and that the .cases decided by the courts of Massachusetts, Maine and Iowa are authoritative on the part of the defendants, it would seem that the authorities outside of Ohio are evenly divided.
*605 It will be profitable at this time to make a survey of such decisions of the supreme court of Ohio as may have some near or remote bearing upon the controversy.
The case of Dailey v. State, 4 Ohio St., 57, was a misdemeanor case and therefore not parallel, but the language of Kennon, J., at page 59, is at least significant: “The accused does not demand a jury, but submits to be tried by the court; and after trial, and after he is found guilty, says T have been deprived of my right of jury trial.’ But who deprived him of that right? Surely, not the court nor the statute: he has clearly waived his right, and then claims that the law is unconstitutional and void because it permitted him to do so.
“We are of opinion that the statute deprived him of none of his constitutional rights, and is therefore not unconstitutional.”
In the case of Dillingham v. State, 5 Ohio St., 280, which was also a misdemeanor case, Ranney, C. J., cites the case of Dailey v. State, supra, with .approval.
In the case of Haynes v. State, 12 Ohio- St., 622, the accused entered a plea of not guilty, waived trial by jury, consented to be tried by the court and was so tried and found guilty and sentenced. Upon error being prosecuted, the attorney general made no contention against a reversal, but on the contrary consented thereto, and without any reasons being assigned by the court, but upon a mere statement that the court was of the opinion that such was the law, the judgment of reversal was entered. *606 Under such circumstances this, case can hardly be accepted as an authority.
In the case of Craig v. State, 49 Ohio St., 415, this court had under consideration Section 7316, Revised Statutes, now Section 13692, General Code, upon the question whether the legislature had power to enact a statute permitting a person accused of murder to confess in open court and the court to have the power to examine the witnesses and determine the degree of crime and pronounce sentence accordingly. It was contended in that case that by the provisions of the Bill of Rights it was intended to make punishment for the higher grades of crime an act of society to be accomplished only through the intervention of a jury, the special representatives of society. If this contention is sound the person accused of crime could not plead guilty. On page 419 of the opinion the court made the following declaration: “It was, no doubt, competent for the framers of the constitution to provide that no person shall be convicted or punished for an offence by his own confession, or in any other mode than by a trial by jury; but the history of the struggle by which the right to trial by jury was established, does not afford sufficient ground to require us to construe a constitutional provision, that in terms merely guarantees to the accused a right to a trial by jury as absolutely prohibiting any other mode of trial, even -With' the consent of the áccused. ” The only constitutional provisions pointed out or discussed in that case were Sections 5 and 10 of the Bill of Rights.
*607 In the case of Ryan v. State, 10 C. C., N. S., 497, one of the jurors who sat during the trial in the court of common pleas was not a qualified juror, because his name was not drawn from the jury wheel and he was not regularly summoned. This fact of disqualification was known to counsel for the defendant at the time the jury was impaneled and no objection was made by him. This was clearly a case where Ryan was tried and convicted by a jury which did not consist of twelve qualified jurors, and yet the circuit court upon a review of the case held that this did not afford ground for a new trial, because of the fact that the attorney at the time had full knowledge of the juror’s disqualification and made no objection thereto. The court used the following significant language at page 504: “Knowledge on the part of the attorney is to be treated as knowledge on the part of his client in a matter of this sort. It is only where there is want of knowledge that the court will hear a party complaining of such disqualification.”
Although this is a circuit court case, it becomes authoritative because it was reviewed by the supreme court and affirmed without opinion in 79 Ohio St., 452.
The foregoing cases are all of the Ohio authorities which throw any light upon the instant case, and, while they are not clearly decisive of the controversy, they do undoubtedly 'incline to the view that the Bill of Rights merely declares a right which may be waived. Section 5 is as applicable to misdemeanors as to crimes, and yet the legislature has made numerous provisions for the trial of misde *608 meanors where imprisonment is not a part of the penalty by courts without the intervention of a jury, and such provisions have been upheld. The case of Craig v. State, supra, is sound only on the theory that jury trial in felony cases is not imperative. If a person accused of crime cannot consent to one juror being excused and the trial proceeding with only eleven jurors, for no better reason than that “the right,of trial by jury shall be inviolate,” then clearly the same reason would forbid the acceptance of a plea of guilty, which would result in the absurdity of forcing upon the accused as well as the state a jury trial to establish facts which are admitted by the confession of guilt.
Having reviewed all the authorities which seem to have any important bearing upon the questions herein involved and finding that they do not settle the proposition, we will briefly discuss this matter upon principle.
It has already been observed that Sections 5 and 10 of the Bill of Rights are not mandatory- or peremptory in form, but that in language they merely confer a right or privilege. This view is supported by reference to other sections of the Bill of Rights. Section 3 provides that “The people have the right to assemble together, in a peaceable manner, to consult for their common good.” Section 4 provides: “The people have the right to bear arms for their defense and security.” It would not of course be contended for a moment that they are 'compelled to do either of these things. It will be seen, therefore, that the framers of the Bill of Rights many times used language which was directory and permissive. *609 On the other hand, by reference to other sections of the Bill of Rights, it will be found that in certain cases they used language which was mandatory, having all the force of a command. As an example of this we refer to Section 12: “No person shall be transported out of the state, for any offense committed ydthin the same; and no conviction shall work corruption of blood, or forfeiture of estate.” And Section 15: “No person shall be imprisoned for debt in any civil action, or mesne or final process, unless in cases of fraud.”
Other sections might be cited further demonstrating the view that the framers of the Bill of Rights intended in some instances to merely confer a right and in others to issue a command.
We think the sounder view is that Sections 5 and 10 merely guarantee a right or privilege and that the purpose of the framers of the Bill of Rights was to prevent the legislature from enacting any statute which would deprive persons accused of crimes of the right of trial by jury. Constitutional provisions are very seldom self-executing, and as a rule are designed either to confer legislative power or place a limitation thereon.
It has been urged in argument that these sections of the Bill of Rights are jurisdictional and that jurisdiction cannot be conferred by consent. We agree that jurisdiction cannot be conferred by consent, but we deny that this question has anything to do with jurisdiction. The court of common pleás of Cuyahoga county had full and complete jurisdiction of the subject-matter of the trial. The pro *610 visions relating to the right of jury trial refer only to the form and manner of the trial, and are in no sense jurisdictional in character. If a person has a right to jury trial, and is deprived of such right, it is an irregularity which constitutes error but does not present a jurisdictional question.
Section 10, which declares that* the accused shall be allowed a speedy public trial by an impartial jury, provides in the same paragraph that he shall also be allowed to appear and defend in person and with counsel, to demand the nature and cause of the accusation against him and to have a copy thereof, to meet the witness face to face and to have compulsory process to procure the attendance of witnesses in his own behalf. Surely no one would contend that his voluntary neglect to employ the process of the court to procure attendance of witnesses in his behalf would be the basis of reversible error, and yet this provision is couched,in the same language and included in the same paragraph which gives him the right to a public trial by jury. It would not be contended for a moment that a litigant in a civil case could not waive any of the provisions regulating trials, or that such litigant would not be held to a strict compliance with any stipulation entered into in the course of a trial. He would be firmly bound by any waiver, he might execute; and, it may be inquired, upon what principle of law does an outlaw become the object of greater solicitude than a law-abiding citizen? A person not under indictment for crime will be held to the performance of his agreements or those of his counsel in the course of the trial of a case in,court, and his waiver *611 of established procedure is binding upon him. After having received the probable or possible benefits of the subsequent course of the trial, he will be estopped from repudiating his agreements or asking to have restored to him. those rights theretofore waived by him. If men not under accusation of wrongdoing are thus held accountable, upon what reason can it be declared as a sound principle of law that persons under indictment should be favored with the advantage of the opportunity created by their agreements and waivers, and, when the opportunity does not result in real advantage, be placed in statu quo? A certain emperor once declared that a solemn treaty between nations had no more value than a scrap of paper. His mistaken notion proved costly not only to himself and his empire, but to the entire world. Contracts have been so sacredly regarded that the federal constitution forbade any state to pass any law impairing their obligations. Shall the courts be less strict in proclaiming their binding force? Or shall persons criminally inclined be encouraged in a dishonest course, and only honest men be held to stand equal before the law?
It is not, claimed in this case that the state gained any advantage by proceeding with only eleven jurors, except the proper advantage of saving time and expense; neither is it claimed that any disadvantage resulted to the accused, except the possibility that the juror who was excused might have caused a disagreement. This remote possibility takes us into the realm of conjecture, and if we we are to indulge in conjecture it may be con *612 jectured that the defendant and his counsel believed it to be to their advantage to go on with eleven jurors. The excused juror might have been objectionable ; the defense may have been well prepared, with witnesses assembled who could not be assembled at a later date; the defendant may have considered the expense which would accrue to himself from another trial. These and numerous other tactical advantages, known perhaps only to himself and his counsel, might make it very important to him to proceed with the trial. To declare as a principle of law that he may not waive his constitutional privileges, and to compel him to forfeit any tactical advantages, would defeat the purposes which the constitutional provisions were designed to serve.
The state, of course, owes to persons charged with crime a fair and impartial trial, and a strict compliance with every guarantee provided by either the constitution or the statutes, but does not owe to them the duty of forcing upon them the acceptance of all possible rights and privileges in the face of an express desire on their part to waive them. It' has been seen that a plea of guilty, which is a waiver of any trial, is permissible even in capital cases, and surely a waiver of any trial necessarily includes the waiver of jury trial. The trend of modern practice and procedure is away from those technicalities and fictions which characterized the earlier practice, and we think it would be a distinct retrogression to sustain the plea of the plaintiff in this case.
We’repeat that the proper practice is to have the journal in all instances express the truth, but in *613 view of the admitted facts, not disclosed by the petition in this case, it becomes immaterial in this particular instance to have the journal corrected, and the plaintiff is estopped by his waiver and consent from invoking the aid of the court by means of the extraordinary writ of mandamus. The writ will therefore be denied.

Writ denied.

Johnson, Hough, Wanamaker and Jones, JJ., concur.
Robinson and Matthias, JJ., dissent.