STATE v. ROBINSON ROGERS AND WALDO McCRACKEN.

(Filed 28 May, 1913.)

1. Constitutional Law—Trial by Jury—Twelve Men.

Under the common law and the State and Federal Constitutions the word jury signifies twelve men duly impaneled in the case to be tried.

2. Same—Attempted Waiver—Judgment, Motion in Arrest of—Procedure—Another Panel.

A trial by jury in a criminal action cannot be waived by the accused, and though by express agreement and his conduct, and that of his attorneys, he may have agreed that his case should be tried by only eleven men, or have attempted to waive his right to have twelve, his subsequent motion on the trial in arrest of judgment on the ground that the jury, being composed of eleven men, was not lawfully constituted, should be granted, the procedure then being to impanel another and lawful jury.

CLARK, C. J., dissenting.

APPEAL by defendant from *Foushee, J.,* at Spring Term, 1913, of HAYWOOD.

Indictment for murder. Before impaneling the jury the solicitor announced that he would not ask for a verdict of murder in first degree.

One of the jurors was taken ill, and the trial proceeded with eleven jurors.

The defendants were convicted of manslaughter and sentenced to the penitentiary.

In apt time they moved in arrest of judgment as well as for a new trial, upon the ground that they were not tried by a lawful jury of twelve men. His Honor, upon such motion, rendered the following judgment:

### FINDING OF FACT.

As the ground for a new trial contained in said two affidavits of defendants, to wit, that they were tried by a jury composed only of eleven men, the court is of the opinion that the defendants are not entitled to any finding of fact on this matter, and so holds; but if the Supreme Court is of a contrary opinion, then he makes the following findings of fact:

That this case was called for trial on Wednesday morning of the first week, when the solicitor moved for a continuance on the ground of the absence of two witnesses to the shooting— one being sick in bed in Canton and the other in South Carolina. Defendants resisted the continuance and insisted on a trial at this term, and the court denied the motion for continuance; that the entire afternoon was consumed before a jury was selected; that the defendants did not exhaust their peremptory challenges; that the jury, after being impaneled, was in charge of an officer for the night who was duly sworn; that Thursday morning, before any evidence had been offered, the solicitor asked that the jury be excused, and in the absence of the jury stated to the court that since the adjournment he and counsel for the defendant had discovered that one of the jurors selected was subject to fits; that he had recently been in Johns Hopkins Hospital and a part of his brain removed, and that he was liable to lose his mental balance if subjected to much mental strain, and that in the opinion of counsel he was not mentally competent to sit on the jury; that the State was willing to call in another juror or to make a mistrial or to get an entirely new panel; that counsel for defendants insisted on proceeding with eleven men, and thereupon it was agreed in open court by the defendants, speaking in open court through their counsel, and the solicitor for the State, that the case would pro-

162—42

ceed with eleven jurors, and that the clerk should make no record of the fact that one of the jury had been excused by consent; that defendants waived their right to have a full panel, and that no point should ever be raised that only eleven men were in the jury box; and thereupon the court excused said juror and directed the trial to proceed; that the two defendants are men of more than ordinary intelligence; that McCracken is about 27 or 28 years of age and the defendant Rogers about 40 years of age, and their families are prominent and wealthy; that both these defendants are possessed of sufficient mental capacity to understand and did understand that both they and their counsel were entering into said agreement, and they having elected and consented to proceed with eleven jurors, the court consented to this course.

These defendants were represented by four able and experienced counsel, one of whom has filled the office of solicitor for two terms.

That the trial proceeded through Thursday, Friday, Saturday, and on Monday the court delivered the charge to the jury; that the defendants were present during this time, during the sessions of court (being under good bonds, the court did not order them in custody during the progress of the trial); that the jury returned their verdict Monday afternoon.

At the request of defendants' counsel, the court gave them until Wednesday of the second week before pronouncing the judgment of the court, and on Wednesday the defendants again stated that they were not ready, and asked for another day, so the court gave them until Thursday A. M.

On Thursday the defendants filed said affidavits, and this was the first time it was suggested that they would attempt to repudiate their solemn agreement; that the defendants were represented by the same counsel throughout the entire term of court; that the defendants did not ask to discharge their original counsel nor did said counsel ask to withdraw from the case, but the same counsel who made the agreement made the motions aforesaid for a new trial.

Wherefore the court is of the ·opinion that by their conduct defendants are estopped to set up the claim that there were only eleven men in the jury box, and the court denies the motion, and the defendants except.

Wherefore the court denies the motion and the defendants except.                                    H. A. FOUSHEE,
                                                    *Judge Presiding.*

The defendants appealed.     ·

*Attorney-General  and  Assistant  Attorney-General  for  the State.*

*W. T. Crawford, Bryson & Black, J. M. Queen, and J. W. Stamey for defendants.* ·

BROWN, J., after stating the case: It is elementary that a jury, as understood at common law and as used in our constitutions, Federal and State, signifies twelve men duly impaneled in the case to be tried. A less number is not a jury. *Traction Co. v. Hof,* 174 U. S., 91.

In *Lamb v. Lamb,* 4 Ohio St., 167, *Chief Justice Thurman* said: "That the term 'jury' without addition or prefix imports a body of twelve men in a court of justice, is as well settled as any legal proposition can be." *Opinion of the Justices,* 41 N. H., 550; *United States v. 1363 Bags of Merchandise,* 2 Sprague, 85; *United States v. R. R.,* 123 U. S., 113.

In *S. v. Scruggs,* 115 N. C., 805, it is held that, "The jury provided by law for the trial of indictments is composed of twelve men; a less number is not a jury, and a trial by a jury in a criminal action cannot be waived by the accused."

In *S. v. Stewart,* an indictment for assault and battery, *Justice Ashe* says: "It is a fundamental principle of the common law, declared in Magna Carta, and again in our Bill of Rights, that no person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court. Art. I, sec. 13. The only exception to this is where the Legislature may provide other means of trial for petty misdemeanors, with the right of appeal.

S. *v.* ROGERS.

"The court here has undertaken to serve in the double capacity of judge and jury, and try the defendant without a jury, which it had no authority to do, even with the consent of the prisoner." Citing 1 Bish. Crim. Law, 759.

In *S. v. Holt,* 90 N. C., 750, an indictment for cruelty to animals, it is held that a jury trial cannot be waived by the defendant in a criminal action.

The defendant may plead guilty, or *nolo contendere,* or *autrefois-convict,* and of course the impaneling of a jury is unnecessary; but when he pleads not guilty in cases, such as this, where a trial by jury is guaranteed by the organic law, he must be tried by a jury of twelve men, and he cannot waive it. *S. v. Moss,* 47 N. C., 66; *Cancemi v. People,* 18 N. Y., 128.

It would have been much safer for his Honor to have followed the settled precedents of this Court, and have discharged the jury and impaneled another.

Innovations in settled methods of procedure are generally unwise, especially in criminal cases. In this connection it is well to remember the words of *Chief Justice Merrimon,* "A great danger arises from practices and precedents that insidiously gain foothold and power in courts of justice by inadvertence and lack of due consideration. . . . In the economy of time, the hurry of business, lack of attention, hasty consideration, irregular methods of trial are adopted, allowed, and tolerated, and thus vicious practices spring up, creating sources of danger to constitutional right." *S. v. Holt, supra.*

New trial.

CLARK, C. J., dissenting: The Constitution, Art. I, sec. 13, provides: "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court." Section 19 of the same article provides: "In all controversies at law respecting property the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable." The right to trial by jury is beyond controversy, both in civil and criminal cases.

There can be no controversy either that the jury here referred to means "twelve men," not because there is any reference to trial by jury in Magna Carta, or that it would have any authority if there was, but because our Constitution, made by our people for our own government, provides for a jury, and the word "jury" must be given the signification which it had when the Constitution was adopted, which was a jury of "twelve men." In some States a jury now may consist of less than twelve, and in several a unanimous verdict is not required. The Supreme Court of the United States in passing upon this matter has held, in several cases, that the number that should compose a jury, and whether unanimity should be required or not, is entirely a matter for the people of each State, and that the Fourteenth amendment does not impose any restrictions upon the States in this regard. The requirement in the Fifth and Sixth amendments to the Federal Constitution of a jury trial is held also to apply only to the Federal courts. This matter has been fully discussed and has been settled in *Hurtado v. California,* 110 U. S., 516; *Caldwell v. Texas,* 137 U. S., 692; *Leeper v. Texas,* 139 U. S., 462; *Brown v. New Jersey,* 175 U. S., 172, and many other cases.

In *Maxwell v. Dow,* 176 U. S., 581, in sustaining a conviction by a jury of eight, as provided by the Constitution of Utah, *Mr. Justice Peckham* reviews the authorities to the above effect, approves them, and says, among other things: "It is emphatically the case of the people by their organic law providing for their own affairs, and we are of opinion they are much better judges of what they ought to have in these respects than any one else can be. The reasons given in the learned and most able opinion of *Mr. Justice Mathews* in the *Hurtado case* for the judgment therein rendered, apply with equal force in regard to a trial by a jury of less than twelve jurors. The right to be proceeded against only by indictment and the right to a trial by twelve jurors are of the same nature and are subject to the same judgment and the people in the several States have the same right to provide by their organic law for the change of both or either." See, also, Cooley Const. Lim. (7 Ed.), 455 *et seq.*

Neither the Federal Constitution nor Magna Carta has any bearing upon the subject. There have been law writers and judges who have stated that Magna Carta, ch. 39, guaranteed the right of trial by jury; but this view originated at a time when historical statements were received with less investigation than at present. Magna Carta was but one of several agreements made between King John (and later by his son Henry III) on the one side and the insurgent barons on the other. Magna Carta was sealed (not signed) on Friday, 19 June, 1215, in the meadow of Runnymede (then a little island) on·the river Thames, 3 miles below Windsor Castle, and in sight from its towers. It was an agreement between the King on the one hand and the great barons on the other. The words therein, *"judicium suorum parium,"* had no reference to a trial by jury. McKechnie Magna Carta, 158, 456, 457; 1 Pollock and Maitland Hist. Eng. Law, 392, 581. About 50 years before, at the Assizes of Clarendon, 1166, Henry II instituted the germ of the grand jury, which at first consisted of twelve men (1 Pollock and Maitland, 131), but thorough investigation has shown that the petty jury was not known in England till nearly 150 years after Magna Carta. At first the verdict was rendered by a majority; that is, seven was a valid verdict. Britton I, 31. There had ·been, further back, in remoter times, instances in which the witnesses were called upon to aid the judicial officer in passing upon a criminal offense. But that cannot be mistaken for the jury which when gradually instituted soon became of the fixed number of twelve, and from which witnesses are excluded. Magna Carta could not refer to the "jury," which was then unknown. ·

Besides, the word *"judicium"* does not mean "jury," but "judgment." McKechnie Magna Carta, 407. What the barons meant in Magna Carta was not that every one should have the right to an impartial trial by jury, for at that time juries were unknown, and the common people had indeed less consideration from the mail-clad barons than from the King. What the barons did stipulate for was a "special privilege" for themselves. The King, when in need of money, had been in the habit of sending .his officials and judges ·to try charges, most

S. *v.* ROGERS.

often trumped up, against wealthy barons and extorting large supplies out of them. Therefore this stipulation in Magna Carta granted them the special privilege that when the King had any charge against one of their order he should not send his judges against them, but the charge should be tried by men of their own order, *i. e.,* by barons. They were to be convicted and sentenced, not by the King's judges, as the common people were, but they were subject only to *"judicium suorum parium,"* i. e., to the "judgment of their equals." The common people might be tried by the judges, who were all appointed by the King and removable at his pleasure. But the barons and bishops made him agree that when he had any charge against them they should be tried and judged "by their peers," that is, by men of their own order. The judges were commoners, and not the peers or equals of the barons, who would have scorned the idea of being tried by them. 1 Pollock and Maitland Hist. Eng. Law, 152, 539, 581. The judges were the equals of other freemen, and could try them. As to the vast masses of the people, the majority of whom were not even freemen, they were guaranteed no trial except in the barons' courts, who were practically their owners. The barons, therefore, in stipulating for a trial of "every freeman" by their peers, were stipulating for a special privilege exempting them from the jurisdiction of the King's courts. This privilege under the circumstances may have been very necessary for their protection, for the judges were the King's agents. But the provision cannot be lauded as guaranteeing to us "trial by jury," which was then an unheard of institution, and to which the barons would under no circumstances have submitted. In McKechnie on Magna Carta the original sources of information are marshaled and interestingly discussed.

King John possessed no power he could confer upon or withhold from the people of this State. No agreements made between him and his barons, which were constantly broken, can restrict or bind us. Magna Carta and other similar contracts between them are of interest as historical documents of a stage far below ours in the development of human rights. They confer no rights upon us, still less do they restrict our right to

self-government. We base our right to this, not upon a grant from any king, but upon the inherent power to govern ourselves, restricted only by the Constitution and laws which we ourselves have made. These old documents are useful only to explain the meaning of words which we have used.

It is universally held that in civil cases trial by jury is simply a right or privilege, and can be waived, unless there is some statute forbidding it. 24 Cyc., 149; 17 A. and E. (2 Ed.), 1097, and numerous cases cited by both. Embraced in these decisions is also, as a corollary, the proposition that in civil cases, by consent, less than twelve may find a verdict.

In criminal cases there is a wide diversity in the courts. In some States it is held that a jury can be waived in all criminal cases, as in civil cases, and in others it is held that a jury cannot be waived except in misdemeanors, and in still others it has been held that a jury cannot be waived in any criminal case. There is nearly the same diversity as to the right in criminal cases of the defendant to agree that the verdict may be rendered by less than twelve men or dispensing with unanimity, except that there are two or three States which, while holding that a jury cannot be waived, yet hold that by consent of the defendant the jury may consist of less than twelve men, as in this case, otherwise there would be a mistrial. The authorities on these propositions may be found, 24 Cyc., 150, 153; 17 A. and E. (2 Ed.), 1098, in numerous cases there cited. For centuries in criminal cases a defendant retained his right to the ancient mode of "trial by battel," and could not be tried by a jury except by his consent. Hence the formula we still retain, "How will you be tried?" and the reply, "By God and my country," *i. e.,* by a jury. 1 Legal Hist. Essays, 657.

As the right to a trial by jury is guaranteed equally by the Constitution in civil and in criminal cases alike, it is difficult to understand why if it is a requirement and not merely a privilege, it can be waived in one class of cases and not in the other. This distinction is not based upon the constitutional phraseology, but upon the view which has happened to be taken by the incumbents of the bench in each State. Among the States which hold that a jury trial can be waived in criminal

cases are Arkansas, Connecticut, Iowa, Kentucky, Louisiana, Nevada, New Jersey, Massachusetts, Michigan, Missouri, Minnesota, Pennsylvania. Among the cases on the point whose reasoning is most worthy of consideration are *S. v. Kaufman,* 51 Iowa, 579; *Com. v. Dailey,* 66 Mass. (12 Cush.), 80; *Murphy v. Com.,* 58 Ky. (Met.), 365; *S. v. Sackett,* 39 Minn., 69; *Com. v. Sweet,* 4 Pa. Dist., 136; *S. v. White,* 33 La. Ann., 1219; and there are others.

In this State it has been held that while in civil cases a jury trial can be waived, this cannot be done in criminal cases. *S. v. Stewart,* 89 N. C., 564; *S. v. Holt,* 90 N. C., 573. *S. v. Scruggs,* 115 N. C., 805, holds, as in *S. v. Holt,* that a jury trial cannot be waived, but it does not directly pass on the point whether by consent a verdict may not be rendered by a lesser number, though that is a reasonable inference.

There can be no reason shown upon the face of the Constitution why a jury trial should be held to be a privilege in civil cases, but an iron-clad requirement in criminal. We, however, have, as just said, no case in which it has been expressly held that the trial, at the request of the defendant, cannot proceed with eleven jurors. It would seem that it could, as the Constitution also guarantees the defendant a right to a "speedy trial." Among able opinions to this effect are *Shaw, C. J.,* in *Com. v. Dailey,* 66 Mass. (12 Cush.), 80; *S. v. Sackett,* 39 Minn., 69; *Simpson, C. J.,* in *Murphy v. Com.,* 58 Ky. (1 Met.), 365. To similar purport, *S. v. Borowsky,* 11 Nev., 119; *Connally v. State,* 60 Ala., 89; *S. v. Kaufman,* 51 Iowa, 578. The following cases also hold valid the waiver of any jury in criminal cases. *S. v. Worden,* 46 Conn., 349; *Dillingham v. State,* 5 Ohio State, 280; *Edwards v. State,* 45 N. J. L., 419; *Ward v. People,* 30 Mich., 116; *S. v. Mansfield,* 41 Mo., 470; *S. v. Cox,* 8 Ark. (3 Eng.), 436; and there are others.

It was at the instance and by the request of the defendants in this case that, one of the jurors becoming incapacitated, no mistrial was entered, and it was agreed that the case should proceed with eleven jurors and that no entry should be made. The judge finds as facts that "the solicitor moved for a con-

tinuance on ground of the absence of two witnesses to the shooting, one being ill and in bed and the other in South Carolina. The defendants resisted the continuance, and insisted on a trial at that term, and the court denied the motion for continuance. The defendants did not exhaust their peremptory challenges. The jury was impaneled and an officer sworn, Wednesday. The next morning, before any evidence had been offered, the solicitor asked for the withdrawal of a juror because since the adjournment he and the counsel for the defendants had ascertained that one of the jurors was subject to fits, and that counsel did not think he was mentally competent to sit on the jury; that the State was willing to call in another juror or to make a mistrial or to get an entirely new panel. Counsel for defendants insisted on proceeding with eleven men, and thereupon it was agreed in open court, the defendants speaking in open court, through their counsel, and the solicitor for the State, that the case would proceed with eleven jurors, and that the clerk should make no record of the fact that one of the jury had been excused by consent; the defendants waived their right to have a full panel, and stated that no point should ever be raised that only eleven men were in the jury box; and thereupon the court excused said juror and directed the trial to proceed; the two defendants are men of more than ordinary intelligence, McCracken being 27 or 28 years of age and the defendant Rogers about 40 years of age, and their families are prominent and wealthy; both these defendants are possessed of sufficient mental capacity to understand and did understand that both they and their counsel were entering into said agreement and electing to proceed with eleven jurors by their assent, and that the court consented to this course. These defendants were represented by four able and experienced counsel, one of whom has filled the office of solicitor for two terms." The trial occupied four days. No objection was made as to the juror being excused until two days after the verdict. The defendants did not ask to discharge their counsel nor did counsel ask to withdraw, and the same counsel who made the agreement made the motion in arrest of judgment upon the ground that it was invalid.

The prisoners have had every right and privilege which is guaranteed them by the Constitution. They thought it was to their benefit to proceed with eleven jurors, and asked that it should be done. The courts may well scrutinize closely all offers to waive a jury trial in criminal cases, because the defendants may act unadvisedly in some cases, and the consequences may be serious. But this should not cause the Constitution to be construed differently as to the trial by jury in civil cases and in criminal cases.

In the present case the court finds as facts that the prisoners were men of intelligence and means and were represented by several able counsel, one of whom was formerly solicitor for that district for eight years. The prisoners do not show that they suffered any detriment in the course of the trial. They have had a fair trial and they have been deprived of no constitutional right.

A defendant has a constitutional right to a speedy trial by jury. Yet he waives this provision by obtaining a continuance. A plea of guilty dispenses with a jury trial altogether. Why, therefore, cannot a defendant agree to accept a verdict by eleven jurors when he has competent counsel and is himself intelligent, and both his counsel and himself think it for his interest to do so? Especially when this is done with the consent of the court and the solicitor representing the State. There is nothing to indicate that the prisoners suffered any prejudice from the absence of the other juror, and they ought not to obtain any benefit by their breach of good faith.