IN THE SUPREME COURT OF NORTH CAROLINA

No. 56PA24

Filed 23 May 2025

STATE OF NORTH CAROLINA

v.

ERIC RAMOND CHAMBERS

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 292 N.C. App. 459, 898 S.E.2d 86 (2024), vacating judgments entered on 8 April 2022 by Judge Rebecca W. Holt in Superior Court, Wake County, and remanding the case for a new trial. Heard in the Supreme Court on 11 February 2025.

*Jeff Jackson, Attorney General, by Caden William Hayes, Assistant Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Heidi Reiner, Assistant Appellate Defender, for defendant-appellee.*

NEWBY, Chief Justice.

In this case we resolve whether a statute that allows a juror to be excused and substituted by an alternate after the jury in a criminal trial has begun to deliberate violates our state constitution. Article I, Section 24 requires a conviction to be by a unanimous jury in open court. This Court has consistently held that a constitutionally prescribed jury in a criminal case must be composed of twelve people. The statute in question requires a jury to begin its deliberations anew following the substitution of

an alternate juror. We therefore conclude that the statute does not violate defendant's state constitutional right to a jury of twelve, and we reverse the decision of the Court of Appeals.

Defendant was charged with first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury after a man was killed and a woman was injured in a shooting at a Raleigh motel. Defendant represented himself at trial, and he chose to be absent from the courtroom after the trial court cut off his closing argument for failure to follow the trial court's instructions.

At 4:44 p.m. on 7 April 2022, the jury retired to commence deliberations. At 4:57 p.m., the jury sent a note to the trial court asking if deliberations would end for the day at 5:15 p.m. The trial court informed the jury that they would be released at 5:15 p.m. unless the jury decided unanimously to stay later. Deliberations resumed at 5:02 p.m. but halted again at 5:11 p.m., when Juror #5 asked to be excused for a medical appointment the next morning. The trial court called and released the jury for the day. The trial court then conducted a colloquy with Juror #5 and ultimately excused him. Having elected to remain absent, defendant was not in the courtroom during the trial court's discussions with the jury or Juror #5, and he therefore did not raise any objection to the excusal.

Defendant was absent again when the jury reassembled at 9:35 a.m. the next morning. The trial court informed the jury that Juror #5 had been excused and that the first alternate juror would be substituted. The trial court instructed the jury to

"restart . . . deliberations from the beginning. This means that you should disregard entirely any deliberations taken place before the alternate juror was substituted and should consider freshly the evidence as if the previous deliberations had never occurred." Defendant, being absent, did not object to the substitution of the alternate or the trial court's instruction. The jury exited the courtroom at 9:38 a.m. and deliberated, asking to review evidence and for clarification on relevant law. At 12:27 p.m., it informed the court that it had reached a verdict. The jury found defendant guilty of both charges, and the trial court sentenced him to life in prison without the possibility of parole for the first-degree murder conviction and 110 to 144 months imprisonment for the assault conviction, to be served consecutively with his life sentence.

Defendant filed a petition for writ of certiorari with the Court of Appeals, which that court allowed. *State v. Chambers*, 292 N.C. App. 459, 460, 898 S.E.2d 86, 87 (2024). There defendant contended that the trial court's substitution of an alternate juror during deliberations violated his state constitutional right to a twelve-person jury. The Court of Appeals unanimously agreed. *Id.* at 460, 462, 898 S.E.2d at 87, 88. Specifically, it reasoned that Article I, Section 24 of the North Carolina Constitution forbids substitution of alternate jurors after deliberations commence because such substitution results in juries of more than twelve persons determining a defendant's guilt or innocence. *Id.* at 460–61, 898 S.E.2d at 87–88 (citing *State v. Bunning*, 346 N.C. 253, 255–56, 485 S.E.2d 290, 291–92 (1997)). Therefore, the Court of Appeals

held that by substituting the alternate juror, the verdict was reached by a jury of thirteen people in violation of our state constitution. *Id.* at 461, 898 S.E.2d at 87–88. It further held that N.C.G.S. § 15A-1215(a), which expressly allows for mid-deliberation juror substitution, conflicted with the state constitution and thus could not support a different outcome. *Id.* at 462, 898 S.E.2d at 88. The Court of Appeals therefore vacated defendant's convictions and remanded for a new trial. *Id.* at 459, 461–62, 898 S.E.2d at 87–88.

The State filed a petition for discretionary review, seeking review of two issues: (1) whether defendant waived his challenge to the constitutionality of subsection 15A-1215(a), and (2) whether subsection 15A-1215(a) is constitutional as amended. We allowed the State's petition on 28 June 2024. We review these questions of law and constitutional questions de novo. *State v. Romano*, 369 N.C. 678, 685, 800 S.E.2d 644, 649 (2019); *N.C. State Bd. of Educ. v. State*, 371 N.C. 149, 157, 814 S.E.2d 54, 60 (2018).

As a preliminary matter, the State contends that defendant waived his right to challenge the constitutionality of subsection 15A-1215(a) on appeal by failing to object to the substitution of the alternate juror at trial. Ordinarily, "[i]n order to preserve an issue for [appeal], a party must . . . present[ ] to the trial court a timely request, objection, or motion"; "stat[e] the specific grounds for the ruling . . . desired"; and "obtain a ruling" from the trial court. N.C. R. App. P. 10(a)(1). "[E]ven constitutional challenges are subject to the . . . strictures of Rule 10(a)(1)." *State v.*

*Bursell*, 372 N.C. 196, 199, 827 S.E.2d 302, 305 (2019). These criteria were clearly not met here.

The Rules of Appellate Procedure provide, however, that some issues may be, "by rule or law[,] . . . deemed preserved . . . without [taking] any such action." N.C. R. App. P. 10(a)(1). At times, this Court has recognized the significance of errors related to a jury's structure. In *State v. Bindyke*, this Court concluded that the presence of an alternate in the jury room was error per se, noting that such "a fundamental irregularity of constitutional proportions . . . requires a mistrial or vitiates the verdict . . . notwithstanding the defendant's counsel consented, or failed to object." 288 N.C. 608, 623, 220 S.E.2d 521, 531 (1975). We made a similar observation in *State v. Bunning*: "A trial by a jury which is improperly constituted is so fundamentally flawed that the verdict cannot stand." 346 N.C. 253, 257, 485 S.E.2d 290, 292 (1997) (declining to apply harmless error review to issues regarding the jury's structure). This make sense; after all, the jury is perhaps *the* hallmark of the American criminal justice system. Accordingly, we hold that issues related to the structure of the jury that found defendant guilty were preserved notwithstanding defendant's failure to object at trial.

We now turn to consider the constitutionality of subsection 15A-1215(a), which pertinently provides:

> The judge may permit the seating of one or more alternate jurors. . . . If at any time prior to a verdict being rendered, any juror dies, becomes incapacitated or disqualified, or is discharged for any other reason, an alternate juror

> becomes a juror, in the order in which selected, and serves in all respects as those selected on the regular trial panel. If an alternate juror replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew. In no event shall more than [twelve] jurors participate in the jury's deliberations.

N.C.G.S. § 15A-1215(a) (2023). When originally enacted in 1977, section 15A-1215 allowed an alternate juror to be substituted at any point *before the case was submitted to the jury*. An Act to Amend the Laws Relating to Criminal Procedure, ch. 711, § 1, 1977 N.C. Sess. Laws 853, 858. Upon submission of the case to the jury, alternate jurors who had not been substituted were dismissed. *Id.* Because substitution of an alternate necessarily occurred prior to the commencement of the jury's deliberations, the original statute did not require the trial court to instruct the jury to begin deliberations anew with the alternate juror. *Id.* Subsection 15A-1215(a) was amended to its current language in 2021 to permit the substitution of an alternate juror at any time *before the verdict is rendered*. An Act to Modify the Provisions Regulating the Service and Release of Alternate Jurors, S.L. 2021-94, § 1, 2021 N.C. Sess. Laws 374, 374. The amendment also added two new provisions to the statute: (1) the requirement for the trial court to instruct the jury to restart its deliberations following substitution of the alternate, and (2) the express mandate that no more than twelve jurors participate in deliberations. *Id.*

In reviewing the constitutionality of this statute, we must "presume that [it] is constitutional." *State v. Tirado*, No. 267PA21, slip op. at 14 (N.C. Jan. 31, 2025). Furthermore, we may strike it down only if "it violate[s] the express constitutional

-6-

text" and its unconstitutionality is demonstrated "beyond a reasonable doubt." *Id.* at 17–18. "Every constitutional inquiry examines the text of the relevant provision, the historical context in which the people of North Carolina enacted it, and this Court's precedents interpreting it." *Id.* at 18.

Article I, Section 24 generally requires a criminal conviction to be by "the unanimous verdict of a jury in open court." N.C. Const. art. I, § 24. The "essential attributes" of a constitutionally prescribed jury include "number, impartiality, and unanimity." *State v. Dalton*, 206 N.C. 507, 512, 174 S.E. 422, 425 (1934).[1] The question before us involves the first essential attribute: number.

At common law, a jury was comprised of twelve people, John V. Orth & Paul Martin Newby, *The North Carolina State Constitution* 80 (2d ed. 2013), and our precedent has long recognized that this common law requirement was engrafted into Article I, Section 24's right to a jury trial, *Dalton*, 206 N.C. at 512, 174 S.E. at 424–25 ("It is not questioned either that trial by jury is deeply rooted in our institutions or that the term 'jury' as understood at common law and as used in the [c]onstitution imports a body of twelve men duly summoned, sworn, and impaneled . . . ."); *State v. Hudson*, 280 N.C. 74, 79, 185 S.E.2d 189, 192 (1971) ("It is a fundamental principle of the common law, declared in Magna Charta and incorporated in our Declaration of

---

[1] Our discussion in this case is limited to the constitutional requirements for juries in criminal cases. In civil cases, the General Assembly has provided that "parties may stipulate that the jury will consist of any number less than [twelve]" in circumstances where a jury is not required by statute. N.C.G.S. § 1A-1, Rule 48 (2023).

Rights, that '[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court.' . . . It is elementary that the jury provided by law for the trial of indictments is composed of twelve persons . . . ." (alteration in original)); *Bindyke*, 288 N.C. at 623, 220 S.E.2d at 531 ("[T]here can be no doubt that the jury contemplated by our Constitution is a body of twelve persons who reach their decision in the privacy and confidentiality of the jury room."). This Court has repeatedly held that no variation in the number of jurors participating in a verdict is permissible. *Whitehurst v. Davis*, 3 N.C. (2 Hayw.) 113, 113 (1800) (per curiam) (ordering a new trial where thirteen jurors participated in the verdict because "any innovation amounting in the least degree to a departure from the ancient mode, may cause a departure in other instances, and in the end, endanger or pervert this excellent institution from its usual course"[2]); *Hudson*, 280 N.C. at 78–80, 185 S.E.2d at 192–93 (awarding *ex mero motu* a new trial where defendant consented to be bound by the verdict of a jury of eleven after the twelfth juror fell ill prior to deliberations).

Looking to subsection 15A-1215(a), we conclude that its unconstitutionality has not been shown beyond a reasonable doubt. Indeed, although it contemplates the substitution of alternative jurors, it provides two critical safeguards that ensure that the twelve-juror threshold remains sacrosanct. Not only does subsection 15A-1215(a) provide that "[*i*]*n no event* shall more than [twelve] jurors participate in the jury's

---

[2] The word "pervert" in this quotation was changed to "prevent" in the current printing of the North Carolina Reports. We use the language from the first printing here for accuracy.

deliberations"; it also requires trial courts to instruct juries to "begin . . . deliberations anew" if an alternative juror is substituted after jury deliberations have begun. N.C.G.S. § 15A-1215(a) (2023) (emphasis added). This requirement preserves the statute's constitutionality. When a jury follows the trial court's instruction and restarts deliberations, as it is presumed to do, *see State v. Prevatte*, 356 N.C. 178, 254, 570 S.E.2d 440, 482 (2002), there is no longer a risk that the verdict will be rendered by thirteen people. This is because any discussion in which the excused juror participated is disregarded and entirely new deliberations are commenced by the newly-constituted twelve: the original eleven jurors and the substituted alternate. Therefore, the ultimate verdict is rendered by the constitutionally requisite jury of twelve.

The trial court in defendant's case gave the jury exactly the instruction required by statute:

> The law of this state grants the defendant to [sic] a unanimous verdict reached only after full participation of the [twelve] jurors who ultimately return a verdict. This right may . . . only be assured if the jury deliberations begin anew. So, fortunately, this happened after you-all had not gotten far in this because it was late in the day, but I need to tell you that you must restart your deliberations from the beginning. This means that you should disregard entirely any deliberations taken place before the alternate juror was substituted and should consider freshly the evidence as if the previous deliberations had never occurred.

A jury is presumed to follow the instructions given by the trial court. *Prevatte*, 356 N.C. at 254, 570 S.E.2d at 482. Accordingly, we presume that defendant's jury obeyed

the trial court's direction to restart deliberations entirely, disregarding any discussion of the case that took place while Juror #5 was a member of the jury. Therefore, defendant's constitutional right to a jury of twelve was not violated, and we reverse the decision of the Court of Appeals.

This Court's decision in *Bunning* does not compel a different result. In that case, this Court addressed "whether an alternate juror may be substituted for a juror after deliberations have begun in a sentencing hearing." 346 N.C. at 255, 485 S.E.2d at 291. The defendant argued on appeal that the substitution was erroneous. *Id.* This Court observed that Article I, Section 24 requires a jury of no more or less than twelve. *Id.* at 255–56, 485 S.E.2d at 291–92. The Court also examined several statutory provisions that all required dismissal of alternate jurors prior to submission of the case to the jury: N.C.G.S. § 15A-2000(a)(2) (1988) (pertaining to capital felony trials), subsection 15A-1215(a) (1988), and subsection 15A-1215(b). *Bunning*, 346 N.C. at 256–57, 485 S.E.2d at 292. Based on these *statutory* provisions, the Court concluded that the General Assembly did not intend to allow jurors to be substituted after deliberations had begun. *Id.* This Court therefore held that the substitution of the alternate juror meant that the defendant was sentenced by more than twelve people because it "ha[d] to assume [the excused juror] made some contribution to the verdict" and the substituted alternate juror had missed important discussions that had taken place before he joined the jury. *Id.* at 256, 485 S.E.2d at 292.

Although *Bunning* cites Article I, Section 24 in its juror substitution

discussion, its conclusion was founded upon its statutory analysis. Indeed, although the Court's conclusion that substitution of the alternate juror violated the requirement that a jury be composed of twelve members shortly followed its discussion of Article I, Section 24, the Court notably did not connect its ultimate conclusion to the constitutional provision. Further, the Court primarily focused on the General Assembly's intent in enacting the various statutes—an analytical step not required in constitutional analyses. *Id.* at 256–57, 485 S.E.2d at 292.

Moreover, the facts of this case are a far cry from those present in *Bunning*. That case involved substitution of an alternate juror during the sentencing phase of the defendant's capital trial. *Id.* at 255–57, 485 S.E.2d at 291–92. Under North Carolina law, both guilt/innocence determinations and sentencing are decided by the same jury in capital trials. N.C.G.S. § 15A-2000(a)(2) (2023). Therefore, the juror who was excused had already participated in the deliberations that led to a verdict of guilty. In defendant's case, by contrast, no determination of guilt had been rendered when Juror #5 was excused and the alternate was substituted. Juror #5 took no part in the deliberations that led to conviction. Therefore, defendant's verdict was rendered by a jury of twelve as required by subsection 15A-1215(a) and Article I, Section 24.

For these reasons, the decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for consideration of defendant's remaining issues raised in that court.

REVERSED AND REMANDED.

Justice RIGGS concurring in part and dissenting in part.

I agree with the majority's holding that issues related to the structure of the jury are automatically preserved for appellate review. *See* N.C. R. App. P. 10(a)(1). However, the North Carolina Constitution requires a unanimous verdict of twelve people—a verdict reached with the consent of all jurors. N.C. Const. art. I, § 24. Long-standing precedent from this Court holds that deliberations involving more than twelve people violate the constitutional right to a unanimous verdict. *See Whitehurst v. Davis*, 3 N.C. (2 Hayw.) 113, 113 (1800) (per curiam); *State v. Bindyke*, 288 N.C. 608, 624 (1975). The statute at issue here, N.C.G.S. § 15A-1215(a), which allows for the replacement of a juror during deliberations does not safeguard the requirement for a unanimous verdict from a jury of twelve enshrined in our constitution. N.C. Const. art. I, § 24. Instructions that mandate that jurors "begin . . . deliberations anew" cannot remedy the structural error resulting from more than twelve participants in the jury verdict. *See* N.C.G.S. § 15A-1215(a) (2023). Thus, I would conclude that allowing for the substitution of an alternate juror during deliberations violates Article I, Section 24 of the North Carolina Constitution and is unconstitutional beyond a reasonable doubt. For that reason, I respectfully dissent.

## I. Constitutional Requirement for a Unanimous Jury of Twelve

Article I, Section 24 of the North Carolina Constitution provides the people of North Carolina with the protection that "[n]o person shall be convicted of any crime

but by the unanimous verdict of a jury in open court." N.C. Const. art. I, § 24. This "grand bulwark" of English liberty was enshrined in North Carolina's 1776 State Constitution as a prized protection against tyranny. 4 William Blackstone, Commentaries 349; *see also* John V. Orth & Paul Martin Newby, *The North Carolina State Constitution* 80 (2d ed. 2013). Indeed, the right predates our Constitution. *See State v. Stewart*, 89 N.C. 563, 564 (1883) ("It is a fundamental principle of the common law, declared in '*Magna Charta,*' and again in our Bill of Rights, that 'no person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court.' "). And, while the state right to trial by jury traces its origins to monarchical English common law, our Founding-Era appellate court recognized that the right to trial by jury is *more* sacrosanct to the people of our State than under English common law because the right is so fundamental to our democratic form of government. *See Dalgleish v. Grandy*, 1 N.C. (Cam. & Nor.) 249, 251 (1800) (rejecting an English common law form of pleading that violated a defendant's right to trial by jury because, "if this mode of proceeding had ever been sanctioned by custom before the revolution, it is utterly irreconcilable to the spirit of our free republican government").

The right to trial by a jury of twelve has always been afforded an inviolable sanctity under our Constitution. *See, e.g.*, *Bayard v. Singleton*, 1 N.C. (Mart.) 5, 7 (1787) (decreeing a statute unconstitutional for unlawfully infringing the constitutional right to trial by jury). "It is elementary that a jury, as understood at

common law and as used in our constitutions, Federal and State, signifies twelve men duly impaneled in the case to be tried." *State v. Rogers*, 162 N.C. 656, 659 (1913). The legal proposition that a jury is "a body of twelve men in a court of justice[ ] is as well settled as any legal proposition can be." *Id.* (quoting *Lamb v. Lane*, 4 Ohio St. 167, 177 (1854)).

As the majority acknowledges, "innovation amounting in the least degree to a departure from the ancient mode [of trial by jury] may cause a departure in other instances, and in the end endanger or prevent this excellent institution from its usual course." *Whitehurst*, 3 N.C. (2 Hayw.) at 113. In *Whitehurst*, the Court was not willing to accept the verdict by thirteen because it deviated from the "ancient" process and endangered the institution of a criminal justice system regulated by juries of peers. *Id.* This statute, N.C.G.S. § 15A-1215(a), which allows replacement of a juror after the start of deliberations, is an innovation that departs from the mode of trial by a jury of twelve and endangers the impartiality and unanimity of the jury. Thus, the majority's conclusion that the statute is constitutional runs contrary to this Court's recent embrace of arcane originalism. *See McKinney v. Goins*, 387 N.C. 35, 45–46 (2025); *Happel v. Guilford Cnty. Bd. of Educ.*, 913 S.E.2d 174, 183 (N.C. March 21, 2025).

While the Legislature may modify trial procedure, we have always held that it may not do so in a manner that diminishes fundamental rights. *See Keddie v. Moore*, 6 N.C. (2 Mur.) 41, 44 (1811) ("It is true that the Legislature cannot impose any

provisions substantially restrictive of the trial by jury; they may give existence to new forums; they may modify the powers and jurisdictions of former courts, in such instances as are not interdicted by the Constitution, from which their legitimate power is derived; but still the sacred right of every citizen, of having a trial by jury, must be preserved."). Although the Court presumes that statutes enacted by the legislature are valid, it is undoubtably the responsibility of the Court to declare a law unconstitutional "if its unconstitutionality is demonstrated beyond reasonable doubt." *Hart v. State*, 368 N.C. 122, 126 (2015); *see also Bayard*, 1 N.C. (Mart.) at 6–7. Our constitutional role is to determine whether legislation is plainly and clearly prohibited by the Constitution. *Hart*, 368 N.C. at 126.

The majority concludes that the unconstitutionality of N.C.G.S. § 15A-1215(a) "has not been shown beyond a reasonable doubt." But this conclusion runs contrary to centuries of case law interpreting Article I, Section 24, to mean a unanimous jury of no more or less than twelve people. *See, e.g., Whitehurst*, 3 N.C. (2 Hayw.) at 113; *State v. Dalton*, 206 N.C. 507, 512 (1934); *Bindyke*, 288 N.C. at 623; *State v. Bunning*, 346 N.C. 253, 255–56 (1997). The Court has held that the constitutional right to a unanimous jury of twelve is not violated when a juror is substituted *before the case is submitted to the jury*, but it has held that substitution *after the start of the deliberations* is a violation. *See Dalton*, 206 N.C. at 512 (allowing replacement of a juror before the case is submitted to the jury); *Bindyke*, 288 N.C. at 622–23 (affirming the constitutionality of replacing a juror before the case is submitted to the jury);

*Bunning*, 346 N.C. at 256 (concluding that the "jury verdict was reached by more than twelve persons" when an alternate juror was substituted after the start of deliberations).

This bright-line rule conforms to a common sense understanding of what constitutes a unanimous verdict from a jury of twelve. In *Dalton*, this Court determined there was no error when the statute at issue allowed substitution of a juror before the case was submitted to the jury. 206 N.C. at 510–11. We concluded this statute did not contravene "the first element" of a valid jury as "composed of twelve men" because an alternate "becomes a juror only when . . . *before final submission of the case to the jury* he takes the place of a member of the original panel." *Id.* at 512 (emphasis added). This specific mechanism of pre-deliberation substitution did not create any constitutional problem because the alternate juror, once substituted, would be present for the entirety of deliberations, which was itself necessary to the "essentials of a unanimous verdict of twelve men":

> It is not easy to perceive how the presence of the alternate could influence the reasoning of any juror to the prejudice of the accused. . . . The alternate . . . *is given equal opportunity to reach a definite, independent, and accurate conclusion.* . . . He is protected by every safeguard that surrounds the jury and insures an impartial verdict. By the uniform practice . . . the jurors are warned to refrain from discussing the merits of the case until the testimony is closed and the charge of the court is concluded; whereupon, after retiring, they enter upon their deliberations. If *before final submission of the case a vacancy results* . . . , the alternate . . . becomes one of the jury and serves in all respects as though selected as an original juror, *and the essentials of a unanimous verdict of*

> *twelve men is thus preserved.*

*Id.* at 512–13 (emphases added).

In contrast, even a *de minimis* intrusion of an alternate into the sanctity of the jury deliberations results in a "fundamental irregularity of constitutional proportions." *Bindyke*, 288 N.C. at 623. If this were not the rule, any process to determine whether there was prejudice made by a substitution would invade the sanctity, confidentiality, and privacy of the jury process. *Id.* at 627. Necessarily, then, substitution of a juror *after* deliberations have begun also does *not* protect this right to a jury of twelve as it has long and invariably been understood under and required by our constitution. *Dalton*, 206 N.C. at 513.

This Court addressed this exact question of whether substitution of a juror during deliberations violated the constitutional right to a unanimous verdict in *Bunning*, 346 N.C. at 256. The Court concluded that substituting the juror after the start of deliberations resulted in an improperly formulated jury that was "so fundamentally flawed that the verdict [could not] stand." *Id.* at 257. In *Bunning*, a juror was replaced by an alternate juror on the second day of deliberations during the sentencing phase of a capital trial, with the trial court "instruct[ing] the jury to begin its deliberations anew." *Id.* at 255. Relying on precedent in *Bindyke*, we held that substitution of the juror during deliberations was error mandating a new trial because it violated the constitutional right to a jury of "no more or less than a jury of twelve persons." *Id.* at 256. We explained:

> In this case, the jury verdict was reached by more than twelve persons. The juror who was excused participated in the deliberations for half a day. We cannot say what influence she had on the other jurors, but we have to assume she made some contribution to the verdict. The alternate juror did not have the benefit of the discussion by the other jurors which occurred before he was put on the jury. We cannot say he fully participated in reaching a verdict. In this case, eleven jurors fully participated in reaching a verdict, and two jurors participated partially in reaching a verdict. This is not the twelve jurors required to reach a valid verdict in a criminal case.

*Id.*

The same scenario exists here: eleven jurors fully participated in reaching a verdict, and two jurors partially participated in reaching a verdict. The original juror appears—in fact and law—to have participated in deliberations: he requested to be excused, stating, "I was trying to work out with my fellow jurors to deliberate this evening, but I think more people had conflicts than I did." This statement discloses that the jury had engaged in some deliberations concerning the substantive issues in the case. *See Bindyke*, 288 N.C. at 629 (holding deliberations begin when there is "*any* discussion of the case").

In any event, and regardless of whether deliberations had in fact begun, per our precedent, we must presume by law that deliberations had begun. *See id.* at 628 (assuming that when a jury has been out for a substantial length of time "it has begun the business for which it was impaneled" and acknowledging that we cannot adopt a rule defining what constitutes a substantial length of time). This rule has developed for good reason because absent such a presumption, this Court would be forced to

inquire into the jury's process of deliberation—which we are not allowed to do. *See id.* at 627 (recognizing that "an inquiry into what transpired in the jury room . . . invades the sanctity, confidentiality and privacy of the jury process"). That the jury deliberated less than thirty minutes is immaterial; again, we must assume by law that this deliberation meaningfully affected the proceedings. *See id.* at 629 ("[I]t cannot be assumed that observations and discussions which take place during the first few minutes after the jurors retire are less significant to the verdict than later deliberations."). Likewise, it is uncontroverted that the replacement juror did not participate in or "have the benefit of the discussion by the other jurors which occurred before he was put on the jury." *Bunning*, 346 N.C. at 256. In short, the same operative facts existed in this case as those that led to constitutional error in *Bunning*. The jury in this case was not a jury of twelve, rather two juries of eleven plus one.

This Court has never read the constitutional ruling in *Bunning* as narrowly as it does today. In *State v. Poindexter*, decided just four years after *Bunning*, we held that the constitutional requirement of trial by a jury of twelve was violated by removal of a juror for misconduct during the sentencing phase of a capital case. 353 N.C. 440, 444 (2001). Further, the juror's misconduct—although not discovered by the trial court until after the jury delivered the guilty verdict—also disqualified him during the guilt/innocence phase and "resulted in a guilty verdict by a jury composed of less than twelve qualified jurors." *Id.* The Court relied upon *Bunning* and *Bindyke*

to conclude that violation of the "defendant's constitutional right to have the verdict delivered by twelve jurors constituted error per se" and the defendant was entitled to a new trial. *Id.* More recently, this Court acknowledged—in an opinion authored by or joined by three members of this majority—that *Bunning* stood for the proposition that a "defendant's constitutional rights were violated per se when only eleven jurors *fully participated* in reaching a verdict in a capital case." *State v. Hamer*, 377 N.C. 502, 507 (2021) (citing *Bunning*, 346 N.C. at 257) (emphasis added).

Therefore, I would conclude that the language in subsection 15A-1215(a) allowing for substitution of a juror after the start of deliberation is unconstitutional because it allows for a verdict by a jury of more than twelve people.

## II.   Jury Instruction Cannot Cure Structural Errors

In the majority's view, the statutory requirement that jurors "begin . . . deliberations anew" after substitution of an alternate juror preserves the statute's constitutionality. *See* N.C.G.S. § 15A-1215(a). But curative instructions are insufficient to remedy a constitutional structural error. *See Francis v. Franklin*, 471 U.S. 307, 324–25 n.9 (1985) (recognizing instances where curative instructions are inadequate to preserve a defendant's constitutional rights); *Bruton v. United States*, 391 U.S. 123, 135 (1968) ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."). Our precedents invariably identify jury-of-twelve violations as

ones in which no instruction can cure the defect. *See Bindyke*, 288 N.C. at 627 ("[T]he presence of an alternate in the jury room during the jury's deliberations violates N.C. Const. art. I, § 24 . . . and constitutes reversible error *per se*."); *Poindexter*, 353 N.C. at 444 ("A trial by a jury that is improperly constituted is so fundamentally flawed that the verdict cannot stand.").

A curative instruction cannot erase the thirty minutes of deliberation that occurred with the first jury of twelve. It is entirely possible that deliberation by the second jury of twelve was informed and influenced by the excused juror's views and discussion during the first deliberation. As we have previously recognized, it is always "quite possible that one or more jurors . . . [may] express[ ] an opinion as to [the] defendant's guilt or innocence," or comment on the evidence in a manner that was persuasive to another juror. *Bindyke*, 288 N.C. at 629. Each juror brings a unique perspective to the jury deliberations and those unique perspectives combine to create a dynamic that necessarily changes when the composition of the jury changes. Our rule precluding substitution of a juror after the case has been submitted to the jury tolerates the possibility that a juror may have contributed nothing specific to the deliberations, at least insofar as the court is free to ascertain, and, at the same time, respects that by virtue of being in the room, each individual contributes to the dynamic of the jury of twelve. Our case law tells us that we must presume that juror number five had an impact on the deliberations in this case. Regardless of whether that original juror said anything to his fellow jurors during

the deliberation period, we must assume by law that the original juror's mere presence impacted the verdict. *See Bindyke*, 288 N.C. at 627–28 ("We hold that at any time an alternate is in the jury room *during deliberations* he participates by his presence and, whether he says little or nothing, his presence will void the trial.").

Any curative instruction cannot change the fact that the alternate in this case was not present for the jury's very first discussion about the merits of the case. *See Dalton*, 206 N.C. at 512–13 (recognizing that a juror's "equal opportunity to reach a definite, independent, and accurate conclusion" and other essential elements of a constitutional jury verdict are preserved by precluding the jury from discussing the case until deliberations begin and only allowing substitution pre-deliberation); N.C.G.S. § 15A-1236(a)(1) (2025) (recognizing that jurors are "[n]ot to talk among themselves about the case except in the jury room after their deliberations have begun"). The substituted juror would always, as an unavoidable factual matter, be a newcomer to the deliberative jury. There is a great and obvious risk that the other jurors could measure the newcomer's position, logic, and arguments against those previously expounded by the excused juror; the alternate juror could likewise internally question whether his or her own judgment aligned with that of the juror they replaced. Any or all of these considerations could shift a single vote from guilty to innocent or vice versa and impact the unanimity of any jury verdict—the foundational constitutional right to trial by jury.

Thus, the replacement of a juror after the start of jury deliberations is an error that cannot be remedied by a curative instruction. *Francis*, 471 U.S. at 324–25 n.9 (recognizing instances where "the risk of prejudice . . . may be so great that even . . . [an] instruction will not adequately protect a criminal defendant's constitutional rights"). A mid-deliberation substitution of a juror converts a constitutional jury of twelve into two unconstitutional jurys of eleven plus one.

### III. *Bunning* Was Decided on Constitutional Grounds and Provided Constitutional Relief

The majority states that this Court's holding in *Bunning*—that replacement of a juror during deliberations should result in a new trial—does not preclude a holding that N.C.G.S. § 15A-1215(a) is constitutional. *See Bunning*, 346 N.C. 253. While *Bunning* of course did not address the particular statutory language at issue here, since that statutory language was not added until 2021, that fact does not undercut the weight of the *Bunning* constitutional rule.

In *Bunning,* the State argued and the Court considered whether three different statutes showed legislative intent to allow for the replacement of a juror after the start of deliberations. *Id.* at 257. The Court concluded that "[t]hese three sections clearly show that the General Assembly did not intend that an alternate can be substituted for a juror after the jury has begun its deliberations." *Id.* The Court then went on to hold that the error identified in *Bunning*—replacing a juror after the beginning of deliberations—was per se reversible because "a jury which is improperly constituted is so fundamentally flawed that the verdict cannot stand." *Id.* That is,

the Court rejected the State's arguments that the three statutes at issue indicated that mid-deliberation substitution was constitutional. *Id.* After rejecting that argument, the Court noted the State argued that if any error existed, then it was harmless. *Id.* The Court also rejected this argument from the State, noting that harmless error review was not available. *Id.* In other words, the Court applied the standard applicable to structural error: "Structural error is a rare form of *constitutional* error resulting from structural defects in the constitution of the trial mechanism which are so serious that a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *State v. Garcia*, 358 N.C. 382, 409 (2004) (cleaned up) (emphasis added) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991)); *see also Hamer*, 377 N.C. at 506. The strong medicine of a new sentencing hearing demonstrates that the *Bunning* Court was addressing the grave wound caused by a constitutional injury. Similar to the situation here, the *Bunning* Court concluded that the replacement of a juror after the start of deliberations violated the constitutional right to a unanimous jury of twelve.

## IV.  Conclusion

In sum, a statute that allows a change in the composition of the jury during deliberations implicates the constitutional right to a unanimous jury of twelve. In accordance with the right enshrined in our 1776 State Constitution and centuries of case law from this Court, I would hold that allowing for the substitution of a juror

after the start of deliberations under N.C.G.S. § 15A-1215(a) is unconstitutional. Thus, I would affirm the decision of the Court of Appeals. I respectfully dissent.

Justice EARLS joins in this concurring in part and dissenting in part opinion.